IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:21-CV-388-FL

| | |
|---|---|
| GARY L. MILES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| CITY OF HENDERSON, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on defendant's motion for summary judgment (DE 35). The motion has been briefed fully and the issues raised are ripe for ruling. For the following reasons, the court grants in part defendant's motion as it pertains to plaintiff's federal claim and remands plaintiff's remaining state law claims to state court where the court declines to exercise supplemental jurisdiction over them.

### STATEMENT OF THE CASE

Plaintiff commenced this civil rights and torts action in Vance County Superior Court ("state court"), on October 19, 2020, by filing an application for an order extending time to file complaint. (See DE 1-1 at 3). On November 9, 2020, plaintiff filed the operative complaint in this matter in state court, asserting a claim against defendant under 42 U.S.C. § 1983, for violations of his civil and constitutional rights, as well as common law claims of malicious prosecution and abuse of process. Defendant removed the action to this court September 23, 2021, on the basis of federal question jurisdiction under 28 U.S.C. § 1331.

Following a period of discovery,[1] defendant filed the instant motion for summary judgment relying upon (1) excerpts from plaintiff's deposition; (2) affidavits of Terrell Blackmon, defendant's city manager; (3) documents pertaining to plaintiff's arrest in 2000; (4) expungement records; (5) a 2017 warrant for plaintiff's arrest; (6) a North Carolina state court's order dismissing the criminal charge for plaintiff's 2017 arrest; and (7) personnel files pertaining to Irma Ellington ("Ellington"), a police officer formerly employed by the Henderson Police Department ("HPD").

In opposition, plaintiff places reliance upon (1) policies and training manuals produced by the HPD; (2) excerpts from plaintiff's deposition; (3) court records dismissing plaintiff's arrests; (4) the 2017 warrant for plaintiff's arrest; (5) a report of separation between Ellington and HPD; and (6) an application and certificate of prior expunction.

## STATEMENT OF FACTS

The undisputed facts and facts viewed in the light most favorable to plaintiff may be summarized as follows. "Beginning in the mid-1990s, [p]laintiff ran a group home for at-risk youth called the Ark Foundation." (Def.'s Stmt. (DE 36) ¶ 1).[2] "In April of 2000, [p]laintiff was investigated following allegations of inappropriate contact with a child" living at the group home. (Id. ¶ 2). Ellington and Angie Arnold, an employee with Child Protective Services ("CPS"), questioned plaintiff about his alleged involvement. (Id. ¶ 3). Thereafter, plaintiff was charged with Felony Statutory Sex Offense/Indecent Liberties with a Minor in case number 2000 CR 003406. (Id. ¶ 4); (see Def.'s App. Stmt. (DE 37) Ex. 2). On February 9, 2001, "[t]he charges

---

[1] In order entered June 30, 2022, the court denied defendant's motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and 12(b)(6), and granted plaintiff's motion for extension of time to serve process. (DE 17).

[2] Pursuant to Local Rule 56.1(a)(2), the court cites to paragraphs in the parties' statements of facts, or portions of such paragraphs, where not "specifically controverted by a correspondingly numbered paragraph in the opposing statement."

against [p]laintiff were voluntarily dismissed," (Def.'s Stmt. ¶ 5), (see Def.'s App. Stmt. Ex. 1), and "expunged on or around June 26, 2002." (Def.'s Stmt. ¶ 6); (see Def.'s App. Stmt. Ex. 3).

"Sometime after June 26, 2002, Vance County District Court file [number] 03 CR 6412 was generated." (Def.'s Stmt. ¶ 7); (see Def.'s App. Stmt. Ex. 4). The warrant generated pursuant to file number 03 CR 6412 was issued March 28, 2000, listed the offense date between October 1, 1997, and September 1, 1998, and named Ellington as the complainant. (See Def.'s App. Stmt. Ex. 4).

On October 18, 2017, "[p]laintiff applied for a concealed handgun permit." (Def.'s Stmt. ¶ 15). The following day, R.M. Fleer, a deputy with the Wake County Sheriff's Office, served plaintiff "with a warrant for arrest in file number 03 CR 6412." (Id. ¶ 16); (see Def.'s App. Stmt. Ex. 4 at 2). Following his arrest, "[p]laintiff was transported" to a Wake County jail, then a Durham County jail, and ultimately to a jail in Vance County. (Def.'s Stmt. ¶ 19–21). "On October 20, 2017, a dismissal was entered in Vance County District Court for file [number] 03 CR 6412." (Id. ¶ 47). The Vance County District Court entered dismissal after it determined "[t]he underlying and original file 2000 CR 003406 was dismissed . . . [and] expunged." (Id. ¶ 48); (see Def.'s App. Stmt. Ex. 5). Plaintiff was released from custody within a day after arriving at the Vance County jail. (See Def.'s App. Stmt. (DE 37-1) 54:3–7).

**COURT'S DISCUSSION**

A.     Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it

3

believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir.

2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B.  Analysis

   1.  Section 1983 Claim

Defendant argues that plaintiff has failed to establish any evidence to support a claim of municipal liability under § 1983, and thus defendant is entitled to judgment as a matter of law.[3] The court agrees.

Under Monell v. Dept. of Social Services of the City of New York, a local government entity may be sued under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" to the plaintiff. 436 U.S. 658, 694 (1978). "A policy or custom for which a municipality may be held liable can arise in four ways: 1) through an express policy, such as a written ordinance or regulation; 2) through the decisions of a person with final policymaking authority; 3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or 4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003).

Plaintiff suggests defendant is liable under the first Lytle category, as well as the third Lytle category in two respects: (1) the express polic[ies] of [d]efendant's police department specifically omit and fail to address proper action for warrant and (2) [defendant's] failure to adequately train

---

[3]   Defendant also argues that plaintiff fails to forecast evidence establishing that plaintiff's alleged injury can be fairly attributed to defendant as opposed to other municipal entities or individuals. Where the court concludes that plaintiff has failed to establish a genuine issue of fact of any municipal liability, the court need not determine whether plaintiff has proffered sufficient evidence that would impute liability to defendant.

5

police officers in the disposition of executed arrest warrants." (Pl.'s Resp. (DE 43) at 5). The court addresses these in turn below.

a. Express Policy

Under the first Lytle category, an express policy, plaintiff's claim fails as a threshold matter because he "make[s] no claim that the existence of a policy, or any part of it, was the cause of [his] injury." Semple v. City of Moundsville, 195 F.3d 708, 712 (4th Cir. 1999). "[T]herefore, there is no claim because of the existence of the policy." Id. In particular, plaintiff does not claim that defendant's express policy he cites (the "Criminal Arrest Policy and Procedure") (Pl.'s App. Stmt. (DE 45) Ex. 1), or any provision therein, caused plaintiff's injury. (See generally Pl.'s Resp.). Rather, plaintiff argues that the Criminal Arrest Policy and Procedure omitted provisions and policies that would have prevented the erroneous duplication of arrest warrants that resulted in plaintiff's 2017 arrest. (See e.g., id. at 6 (arguing that defendant's access to state repository tracking technology for arrest warrants "surely would warrant a policy change to ensure citizens are protected from arrest warrants the [HPD] causes to be issued")); (see also id. at 7 ("Therefore it stands, [plaintiff's] harm, being rearrested for a heinous crime over a decade later on account of a warrant issued in the year 2000, could reasonably have been avoided had the policy issued from the [HPD] encompassed a review of warrants issued from the [HPD].")); (see id. ("The policy clearly does not directly command officers to follow up on arrest warrants they seek.")). Thus, where plaintiff argues that defendant's "policy has not been articulated by but is alleged to be reflected in the omissions of" the Criminal Arrest Policy and Procedure, plaintiff's claims properly are analyzed only under the third Lytle category of municipal liability. Wellington v. Daniels, 717 F.2d 932, 936 (4th Cir. 1983).

b.  Policy Omission

"[A]n official policy can be inferred from a municipality's omissions as well as from its acts."  Id. at 935.  "Nevertheless, such omissions are actionable only if they constitute tacit authorization of or deliberate indifference to constitutional injuries."  Id. at 936; see also Carter v. Harris, 164 F.3d 215, 218 (4th Cir. 1999) ("Municipal policy may be found . . . in certain omissions on the part of policymaking officials that manifest deliberate indifference to the rights of citizens.").  "[A] municipal policy or custom giving rise to § 1983 liability will not be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees."  Milligan v. City of Newport News, 717 F.2d 227, 230 (4th Cir. 1984).

Plaintiff points to various provisions of defendant's Criminal Arrest Policy and Procedure, including Section 1 titled "Discretion" which states that "[t]he proper exercise of discretion does not relieve the investigating officer of his responsibility to conduct a thorough preliminary investigation of crimes or incidents." (Pl.'s App. Stmt. Ex. 1 at 1).  While plaintiff acknowledges that "[t]he policy clearly does not directly command officers to follow up on arrest warrants they seek," plaintiff argues that the Criminal Arrest Policy and Procedure's failure to "properly acknowledge the active warrant for [p]laintiff's arrest" resulted in plaintiff's erroneous arrest in 2017.  (Pl.'s Resp. at 7).

In Wellington, the United States Court of Appeals for the Fourth Circuit confronted a similar theory of municipal liability where "the alleged government policy stem[med] from [the municipality's] failure to prohibit the use of the Kel-lite flashlight by . . . police officers or at least to have issued cautionary instructions regarding the use of the Kel-lite flashlight as a weapon."  717 F.2d at 936–37.  There, the Fourth Circuit concluded that an omission in the city's policy addressing Kel-lite flashlights did not give rise to liability even where the city's police chief

testified that he knew both Kel-lite flashlights had caused serious and sometimes fatal injuries in other jurisdictions, and members of his force sometimes used Kel-lite flashlights as a weapon. See id. at 937.

Here, even more removed from plaintiff's injury than the policy in Wellington, plaintiff proffers no evidence that anyone associated with defendant or the HPD knew of issues surrounding duplicate arrest warrants following expungement, and plaintiff fails to point to other such instances or patterns of instances. Plaintiff fails to proffer depositions with city officials or other evidence that would create a genuine dispute of material fact as to defendant's "tacit authorization of or deliberate indifference to" plaintiff's injury. Id. at 936. "[M]unicipal liability may not be rested simply upon a failure to adopt policies that in retrospect can be seen to be a means by which particular unconstitutional conduct of its employees might have been averted." Milligan, 717 F.2d at 230.

Thus, plaintiff's § 1983 claim premised upon a theory of an omission in defendant's Criminal Arrest Policy and Procedure fails as a matter of law.

    c.    Failure to Train

For similar reasons, plaintiff's § 1983 claim under a failure to train and failure to supervise theory must fail. See Spell v. McDaniel, 824 F.2d 1380, 1389 (4th Cir. 1987) (treating failure to train and failure to supervise identically under Monell).

A violation is shown in the context of a failure to train, including failure in the design and implementation of training programs and the follow-up supervision of trainees, where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." City of Canton, Ohio v. Harris, 489 U.S. 378, 390 (1989).

"A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." Connick v. Thompson, 563 U.S. 51, 62 (2011); see Wellington, 717 F.2d at 936 ("Generally, a failure to supervise gives rise to § 1983 liability. . . only in those situations in which there is a history of widespread abuse. Only then may knowledge be imputed to the supervisory personnel."). "Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." Connick, 563 U.S. at 62. "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." Id.

Here, plaintiff proffers an HPD training order, (see Pl.'s App. Stmt. Ex. 4) and argues that the absence of a "training standard for officers after they caused an arrest warrant to be issued" creates a triable issue of fact as to defendant's unconstitutional policy where the HPD has "the necessary equipment and resources [to] track active warrants across the state." (Pl.'s Resp. at 8–9). For the reasons stated above, where plaintiff's § 1983 claim "rests upon [defendant's] failure to adopt policies that in retrospect can be seen to be a means by which particular unconstitutional conduct of its employees might have been averted," that claim must fail. Milligan, 717 F.2d at 230.

Further, plaintiff has not provided any evidence of or even alleged, for example, "continued inaction in the face of documented widespread abuses." Grayson v. Peed, 195 F.3d 692, 697 (4th Cir. 1999). Plaintiff has asserted in only conclusory terms that "the evidence shows, even equipped with a program to track any warrant . . . [d]efendant still failed to even attempt to implement any

kind of training to prevent the harm that is readily apparent from an unjustified, outstanding arrest warrant." (Pl.'s Resp. at 9) (emphasis omitted). But plaintiff brings forward no evidence that plaintiff's harm was readily apparent from defendant's failure to train its officers on tracking already-served arrest warrants. "The deficiency also must make the occurrence of the specific violation a reasonable probability rather than a mere possibility when the exigencies of police work are considered." Spell, 824 F.2d at 1390. "Only if, in light of the duties assigned to specific officers or employees, the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, can a municipality reasonably be said to have been deliberately indifferent to that need." Jordan by Jordan v. Jackson, 15 F.3d 333, 341 (4th Cir. 1994). Plaintiff's assertions in his brief and in his deposition testimony fail to meet this standard.

Thus, plaintiff's § 1983 claim premised upon a theory of a failure to train and failure to supervise also fails as a matter of law.

2. State Law Claims

Plaintiff also asserts common law claims for malicious prosecution and abuse of process, premised upon defendant's actions in creating file number 2000 CR 003406 that supported plaintiff's 2017 arrest and Ellington's status as complainant on the warrant generated pursuant to file number 03 CR 6412.

Where plaintiff's claims against defendant formed part of the same case or controversy as the federal claim alleged against defendant pursuant to § 1983, this court has supplemental jurisdiction to adjudicate plaintiff's state law claims. 28 U.S.C. § 1367. For purposes of § 1367(a), claims "form part of the same case or controversy" if they "derive from a common nucleus of operative fact" or "are such that [plaintiff] would ordinarily be expected to try them all in one

judicial proceeding." Axel Johnson, Inc. v. Carroll Carolina Oil Co., 145 F.3d 660, 662 (4th Cir. 1998).

"A district court may decline to exercise supplemental jurisdiction over a [pendent state law] claim if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). "[I]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966); see Carlsbad Technology, Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 357 (1988) ("[A] district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate.").

Accordingly, where plaintiff's federal claim under § 1983 is dismissed, the court declines to exercise supplemental jurisdiction over plaintiff's state law claims and remands them to state court.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (DE 35) is GRANTED IN PART as it pertains to plaintiff's § 1983 claim. The Court declines to exercise supplemental jurisdiction over plaintiff's state law claims, and such claims are REMANDED to Superior Court of Vance County, North Carolina. The clerk is DIRECTED to transmit a certified copy of this order to the clerk of Superior Court of Vance County, North Carolina, and to file in this case a copy of the clerk's transmittal letter with certified copy of the instant order. The clerk is further DIRECTED to close this case.

SO ORDERED, this the 27th day of March, 2024.

                                                    LOUISE W. FLANAGAN  
                                                    United States District Judge